IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

JOHN W. TALBOT,

                                                 OPINION AND ORDER

                  Petitioner,

                                                  12-cv-908-bbc

    v.

MICHAEL DITTMANN, Warden,
Redgranite Correctional Institution,

                  Respondent.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

       Petitioner John Talbot, a prisoner at the Redgranite Correctional Institution, has filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254. After conducting a preliminary review of the petition, I directed respondent to show cause why relief should not be granted. The petition is now fully briefed and ready for decision. After reviewing the materials submitted by the parties, I conclude that petitioner has failed to show that the state court decisions he is challenging involved an unreasonable determination of the facts or federal law, so I will deny his petition.

       From the petition, this court's records and state court records available electronically, I find the following facts.

1

FACTS

Following a January 19, 2003 incident in which a pedestrian was killed, petitioner John Talbot was charged with homicide by intoxicated use of a motor vehicle and homicide by use of a motor vehicle while having a prohibited blood alcohol content. After plea negotiations, petitioner pleaded no contest to the homicide with prohibited blood alcohol content count and the homicide by intoxicated use of motor vehicle count was dismissed, along with several traffic citations.

At the plea hearing, the prosecution and defense agreed that the state would agree with the presentence investigation report recommendation for length of initial confinement unless that recommendation ended up being for fewer than ten years, in which case, the state would argue for ten years of initial confinement. However, the plea questionnaire form was typed originally to state that the district attorney would *cap* his recommendation at ten years. (This may have represented both petitioner's and his counsel's understanding of the plea deal at some earlier time; a March 2003 letter from counsel stated that the district attorney would cap his recommendation at ten years. Dkt. #1, exh. 1 at 132.) On the version of the questionnaire submitted to the circuit court, this typewritten line capping the recommendation was "obliterated" and defense counsel handwrote the amended terms, stating that the state would be recommending *at least* ten years. Dkt. #15, exh. 2 at 36. Counsel told the court that when he "reviewed the plea questionnaire today the—there was a mistake in it, and that's our true agreement—accurate agreement, rather." Dkt. #15, exh. 5 at 921. The court did not question petitioner specifically about the amended provision

at the plea hearing, but did ask him whether he understood that the court did not have to abide by any agreement of the parties about sentence length. Petitioner stated that he understood that. The court accepted petitioner's plea, convicted him and sentenced him to 16 years of initial confinement and 8 years of extended supervision.

In May 2004, petitioner moved to withdraw his plea, alleging that (1) he did not understand the actual terms of the plea agreement, specifically "with respect to the state's sentencing recommendation;" (2) under Wisconsin law, the circuit court "did not fulfill its duty to make a record of [his] understanding of the consequences of his plea;" and (3) trial counsel provided ineffective assistance by failing to accurately describe the offer to him and by failing to object to the prosecutor's recitation of the agreement. Dkt. #15, exh. 2 at 43. On July 15, 2004, the state circuit court held a hearing on petitioner's motion, at which petitioner, his girlfriend (who had accompanied him at trial) and his trial counsel testified. Counsel testified that he had discussed the misunderstanding regarding the state's plea offer with petitioner and informed him about the actual offer before petitioner signed the plea questionnaire. Petitioner testified that counsel did not tell him about the misunderstanding and that he was unaware of the actual deal. Petitioner's girlfriend testified that petitioner signed the version of the offer without the handwritten changes made to it. Dkt. #15, exh. 5 at 975.

On April 11, 2005, the court circuit issued a ruling denying petitioner's motion to withdraw his plea, concluding:

> [Petitioner] speaks in terms of his understanding and hearing, but shows no legitimate basis for his lack of understanding and failure to hear. Such a claim

3

> could be made by every defendant after every plea. A court is required to assure that a defendant's plea is knowing and voluntary by complying with Bangert and Hampton. [Petitioner] fails to show that the court failed to comply with Bangert or Hampton. A defendant is entitled to be informed by counsel of the plea agreement. [Petitioner] fails to establish that his attorney failed to inform him of the plea agreement. [Petitioner] fails to show by clear and convincing evidence that his plea was involuntary— his contention that he didn't understand the plea agreement is unreliable, his contention that he wasn't informed is disproved. [Petitioner] fails to show that the finding that the court made on 6/17/03, that his plea was knowing and voluntary, should be set aside.

Dkt. #15, exh. 2 at 137.

Petitioner filed an appeal with the Wisconsin Court of Appeals, raising only the argument that the circuit court should have inquired whether petitioner understood the terms of the plea agreement. Dkt. #15, exh. 3 at 190. In an April 20, 2006 decision, the court of appeals concluded that the circuit court did not have a duty under Wisconsin law to make this inquiry. Dkt. #15, exh. 3 at 282 (State v. Talbot, No. 2005AP1101-CR). Petitioner filed a petition for review with the Wisconsin Supreme Court that was denied summarily in October 2007.

In October 2008, petitioner filed a pro se petition in the state court of appeals for a writ of habeas corpus, alleging that he had received ineffective assistance from his post conviction and appellate counsel. After being prompted by the court to clarify which ineffective assistance of counsel issues had been raised in post conviction proceedings, so that they were properly before the court (ineffective assistance issues not raised in post conviction proceedings must first be brought in a post conviction motion in the trial court), petitioner honed his claims to the following:

    (1)    failing to argue that trial counsel was ineffective by entering into a plea agreement without petitioner's knowledge or understanding;

    (2)    failing to argue that counsel was ineffective by not insuring that petitioner's waiver of his right to trial was knowingly, voluntarily and intelligently entered; and

    (3)    failing to argue that the trial court accepted his plea without insuring that he knowingly, voluntarily and intelligently waived his constitutional rights.

The court of appeals denied the petition on October 9, 2009, stating that his appellate counsel had no reason to appeal the first issue because the trial court found petitioner not credible when he testified at the post conviction hearing that he had been unaware of the amended plea agreement. Dkt. #15, exh. 3 at 372 (State ex rel. Talbot v. Jenkins, No. 2008AP2652-W). Further, the court concluded that it could not rule on the second two issues because petitioner had not raised them in post conviction proceedings. Id. at 367.

Petitioner filed a petition for review with the Wisconsin Supreme Court in which he did not raise the issue of his post conviction or appellate counsel's ineffectiveness. Rather, he argued that the trial court should have performed an inquiry into his understanding of the revised plea deal. The court denied the petition summarily on March 16, 2010.

In April 2010, petitioner filed a post conviction motion in the state circuit court, raising the following issues:

    (1)    the state breached the plea agreement by altering it after he had signed it;

    (2)    the altered plea agreement was ambiguous;

> (3)   trial counsel was ineffective for not explaining the plea agreement, ascertaining petitioner's understanding of it and altering it after petitioner had signed it;
>
> (4)   trial counsel denied petitioner due process and was ineffective when he entered into a new plea agreement without petitioner's permission;
>
> (5)   post conviction counsel was ineffective for failing to raise or fully develop claims one through four;
>
> (6)   the plea colloquy was deficient given the evidence showing that the deal was amended; and
>
> (7)   the failure to obtain petitioner's initials on the amended plea questionnaire invalidated that document.

Dkt. #15, exh. 2 at 140. In a September 9, 2010 decision, the circuit court denied the petition. Id. at 184. The court stated that each of the first four claims was procedurally barred because petitioner had raised them previously, but went on to address the merits of those claims nevertheless, stating that there was no evidence that the agreement had been breached, that petitioner was not informed or that he did not understand the revision. The court rejected the fifth claim with the conclusion that petitioner had "fail[ed] to state a basis upon which ineffective representation occurred or upon which prejudice can be found." The court did not discuss the sixth or seventh grounds.

Petitioner appealed the denial of his motion, and in a May 31, 2012 decision, the Wisconsin Court of Appeals denied his appeal, concluding that some of petitioner's claims had been decided in previous appeals and that the circuit court had rejected his assertion that he did not understand the amended plea agreement. Dkt. #15, exh. 4 at 818 (State v. Talbot, No. 2010AP2319). Petitioner filed a petition for review with the Wisconsin Supreme Court that was denied summarily on November 14, 2012.

OPINION

Petitioner attempts to raise eleven claims in his petition, which overlap to a large degree. In his own words, those claims are as follows:

(1) My plea was not knowingly, voluntarily, and intelligently entered. The plea agreement was changed after I signed it and even the new agreement was ambiguous. State's offer under my understanding was that they would "cap" their recommendation at 10 years initial confinement.

(2) The plea agreement was ambiguous and the lower courts applied the wrong standard of review. State and Federal law avers that "Courts are to indulge every reasonable presumption against waiver," further non-waiver is presumed unless waiver is affirmatively shown and here it wasn't.

(3) Trial counsel entered into a new plea agreement without the approval of the defendant or his understanding of that agreement.

(4) The State breached the agreement it made with me and then did an end run around at the plea hearing after I entered my plea and using an ambiguous plea agreement to break the agreement as understood [by] myself not to recommend more [than] 10 years initial confinement.

(5) Appellate counsel was ineffective [in a variety of ways].

(6) The State breached the plea agreement it entered into with the petitioner.

(7) The altered plea questionnaire/waiver of rights form was ambiguous as the plea agreement could be interpreted in more than one way and petitioner's reasonabl[e] understanding of the plea agreement . . . . [P]etitioner would never have accepted the plea and instead would have insisted on going to trial.

(8) Trial counsel was ineffective for not correctly explaining the plea agreement, ascertaining petitioner's understanding of the plea agreement, ascertaining petitioner's understanding of the attorney's mistake in regard to the plea agreement on the actual recommendation and altering the agreement and altering it after petitioner had signed it

    and failing to ascertain that petitioner understood that the recommendation as stated in his March 20, 2003 letter and other conversations was incorrect and that the State's actual recommendation was a "floor" of ten years, with a "cap" possibly at the maximum if the PSI report so recommended, instead of a "cap" of no more than 10 years initial confinement.

(9) Trial counsel denied petitioner due process and was ineffective when he entered into a new plea agreement without petitioner's permission or knowledge and for failing to object when the State breached the agreement he explained to petitioner.

(10) Considering the inconsistencies in between the two plea questionnaire/waiver of rights forms . . . the circuit court's colloquy with petitioner concerning those inconsistencies was incomplete and inadequate.

(11) The failure of either the State or petitioner's attorney to obtain petitioner's initials on the scratched out and altered portions of the plea questionnaire/waiver of rights form invalidated that document and rendered petitioner's plea not knowingly, voluntarily, or intelligently entered.

  The Anti-Terrorism and Death Penalty Act of 1996 allows a district court to issue a writ of habeas corpus on behalf of a person in custody pursuant to a state court judgment "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).  However, before a state habeas petitioner is allowed to pursue his claims in federal court, he must exhaust his state court remedies.  28 U.S.C. § 2254(b).

  Respondent argues that petitioner failed to exhaust his claims either because he failed to raise them at each level of the state court system or failed to fully present them by neglecting to set out controlling legal principles supporting his claims.  As shown by both the history of petitioner's state court proceedings and the eleven overlapping claims he presents

in the present habeas action, petitioner has made life more complicated for himself and for the courts by his lack of precision in labeling his individual claims throughout each step of the process. However, I need not consider whether he adequately raised and then fully presented each of his claims, because his claims clearly fail on the merits.

The federal statute governing petitions for writs of habeas corpus, 28 U.S.C. § 2254, provides for a "highly deferential" standard of review. Woodford v. Visciotti, 537 U.S. 19, 24 (2002) (internal quotation and citation omitted). Under 28 U.S.C. § 2254(d), a district court may not grant a state prisoner's petition with respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

This provision means that on habeas review, federal courts are usually limited to a deferential review of the reasonableness and not the absolute correctness of a state court decision. E.g., Harrington v. Richter, 131 S. Ct. 770, 785 (2011). For purposes of reviewing the reasonableness of the state court's decision, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Id. at 786-87.

Although petitioner enumerated eleven separate but overlapping claims in his petition, they can be boiled down to the following:

(1) Without petitioner's knowledge or permission the plea deal was changed from a ten-year "cap" on initial confinement recommendation to a ten-year "floor."

(2) The circuit court did not ask him whether he agreed with the ten-year floor.

(3) His trial counsel was ineffective by allowing these errors and his appellate and post conviction counsel was ineffective by failing to raise these errors.

I must deny plaintiff's claims on the merits because he has not shown that the state court based its decisions in his case on unreasonable determinations of the facts or that they unreasonably applied federal law as articulated by the United States Supreme Court.

First, with regard to factual determinations, the circuit court explained in great detail why it did not believe petitioner's version of the facts, after hearing testimony from petitioner, petitioner's girlfriend and his trial counsel. The circuit court called petitioner's credibility "questionable" and his evidence in support of his arguments "overwhelmed by countervailing evidence," concluding in particular: "I find, however, as indicated above, that [petitioner] was informed of the terms of the sentencing portion of the plea agreement as it was stated on the record at the plea hearing by the state and concurred in by his counsel." On appeal, the Wisconsin Court of Appeals did not take issue with any of these factual findings; to the contrary, it relied on these findings in denying many of petitioner's claims.

Generally, in habeas proceedings this court must accept a state court's factual findings. Araujo v. Chandler, 435 F.3d 678, 682 (7th Cir. 2005) (citing 28 U.S.C. §§ 2254(d)(2);

10

2254(e)(1)). Findings of fact made by the state courts are presumed correct and are rebutted only by clear and convincing evidence. Foster v. Schomig, 223 F.3d 626, 631 (7th Cir. 2000). Petitioner continues to assert that he did not know about the plea amendment, but this bare assertion does not overcome the presumption that the state court's contrary factual findings are correct. Therefore, petitioner fails to show that the adverse state court rulings were based on an unreasonable determination of the facts.

Moreover, it is petitioner's burden to show that the state court decisions in his case are not supported by the constitutional law determined by the United States Supreme Court. Although the court of appeals discussed only Wisconsin state law in their decisions addressing the merits of petitioner's claims, petitioner has not shown anything in those decisions that ran counter to the law established by the United States Supreme Court.

A no contest plea must be voluntary and intelligent. Parke v. Raley, 506 U.S. 20, 29 (1992). To enter a voluntary and intelligent plea, a defendant must have full awareness of the plea's "direct consequences," Brady v. United States, 397 U.S. 742, 755 (1970), "real notice of the true nature of the charge against him," Henderson v. Morgan, 426 U.S. 637, 645 (1976), and understand "the law in relation to the facts," McCarthy v. United States, 394 U.S. 459, 466 (1969). Whether a plea was entered knowingly and voluntarily is determined from "all of the relevant circumstances surrounding it." Brady, 397 U.S. at 749. Guilty pleas "are accorded a great measure of finality" because they "are important components of this country's criminal justice system." Blackledge v. Allison, 431 U.S. 63, 71 (1977). As a result,

11

the petitioner bears the burden of proving that he entered his plea involuntarily and unintelligently. Marx v. United States, 930 F.2d 1246, 1250 (7th Cir. 1991).

Petitioner cannot meet this burden. He asserts that the trial court should have asked him point-blank if he was aware that the state was recommending at least ten years of initial confinement, but he does not cite any Supreme Court precedent suggesting that this is required, and I am aware of none. In any case, petitioner's claims are premised on the idea that the court allowed him to "agree" to plea agreement terms of which he was not aware, but the state court's factual findings refute this premise. Because petitioner has not shown that the state court decisions involved an unreasonable determination of the facts or federal law, his petition must be denied.

Under Rule 11 of the Rules Governing Section 2254 Cases, the court must issue or deny a certificate of appealability when entering a final order adverse to a petitioner. To obtain a certificate of appealability, the applicant must make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); Tennard v. Dretke, 542 U.S. 274, 282 (2004). This means that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 336 (2003) (internal quotations and citations omitted).

Although the rule allows a court to ask the parties to submit arguments on whether a certificate should issue, it is not necessary to do so in this case because the question is not a close one. For the reasons stated above, reasonable jurists would not debate the decision that

the petition should be denied. Therefore, no certificate of appealability will issue. Petitioner is free to seek a certificate of appealability from the court of appeals under Fed. R. App. P. 22, but that court will not consider his request unless he first files a notice of appeal in this court and pays the filing fee for the appeal or obtains leave to proceed in forma pauperis.

ORDER

IT IS ORDERED that

1. The petition for writ of habeas corpus submitted by petitioner John Talbot, dkt. #1, is DENIED.

2. Petitioner is DENIED a certificate of appealability. If petitioner wishes, he may seek a certificate of appealability from the Court of Appeals under Fed. R. App. P. 22, after first filing a notice of appeal with this court and paying the filing fee for the appeal or obtaining leave to proceed in forma pauperis.

Entered this 8th day of April, 2014.

BY THE COURT:
/s/
BARBARA B. CRABB
District Judge